**UNITED  STATES  DISTRICT  COURT**
**DISTRICT  OF  ARIZONA**

Craig Clay Thornton,
Petitioner
-vs-
Charles L. Ryan, et al.,
Respondents.

CV-14-0834-PHX-SPL (JFM)

**Report & Recommendation**
**on Petition for Writ of Habeas Corpus**

## I. MATTER  UNDER  CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Buckeye, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on April 21, 2014 (Doc. 1).  On January 14, 2015, Respondents filed their Response (Doc. 18).  Petitioner has not filed a reply.

The Petitioner's Petition is now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT  FACTUAL  &  PROCEDURAL  BACKGROUND

### A. FACTUAL  BACKGROUND

In disposing of Petitioner's direct appeal, the Arizona Court of Appeals summarized the factual back ground as follows:

> In January 2009, Defendant and four accomplices unlawfully entered the victim's residence, intending to burglarize the residence, which defendant and accomplices believed contained $200,000 cash and a large quantity of marijuana. Defendant and another accomplice were armed. When defendant and accomplices entered

1

the home, the victim stood up from the couch and said, "Don't hurt me. You can have everything, don't hurt me." Defendant and the other armed accomplice both shot at the victim. Defendant and accomplices then fled the residence, taking nothing. The victim sustained multiple gunshot wounds, which were determined by the medical examiner to have caused his death.

(Exhibit HH, Mem. Dec. at 3.)  (Exhibits to the Answer, Doc. 18, are referenced herein as "Exhibit ___.")

**B. PROCEEDINGS AT TRIAL**

In an Indictment (Exhibit A) filed March 13, 2009 in Maricopa County Superior Court, naming Petitioner and 3 accomplices, Petitioner was charged with one count of first degree murder, one count of attempted armed robbery, and one count of burglary in the first degree. Petitioner proceeded to a jury trial and was convicted on all counts. (Exhibits E, F, G, Verdicts.)

The trial court sentenced Petitioner to a life sentence in prison with the possibility of parole after twenty-five years for count one, a presumptive sentence of seven-and-a-half years in prison for count two, and a presumptive sentence of ten-and-a-half years in prison for count three, with all sentences to be served concurrently.  (Exhibit L, Sentence.)

**C.  PROCEEDINGS ON DIRECT APPEAL**

Petitioner filed a direct appeal (Exhibit I, Not. Appeal), and counsel filed a brief (Exhibit GG) pursuant to *Anders v. California*, 386 U.S. 738 (1967) and related statue authorities, asserting an inability to find an issue for appeal.  Counsel requested review at Petitioner's request on errors relating to failure to severe, insufficient evidence, instructional error, a racially disparate jury, and failure to call Petitioner's alibi witnesses.  Petitioner was given leave to, but did not, file a brief *in propria persona*. (Exhibit HH, Mem. Dec. at 2.)

In a Memorandum Decision filed June 7, 2011, the Arizona Court of Appeals conducted a search for error, rejected Petitioner's assertions, found no error, and

affirmed Petitioner's convictions and sentences. (*Id.* at 4-5.)

Petitioner did not seek further review.   (Petition, Doc. 1 at 3.)

**D.  PROCEEDINGS ON POST-CONVICTION RELIEF**

**First PCR Proceeding** – During the pendency of Petitioner's direct appeal, Petitioner commenced his first post-conviction relief ("PCR") proceeding on June 14, 2010, by filing a PCR Petition dated May 31, 2010.  (Exhibit II.)   Counsel was appointed (Exhibit JJ, M.E. 6/16/10), but on June 8, 2011 (one day after the appellate court's decision), the PCR court dismissed the PCR proceeding without prejudice on the basis of the pending direct appeal (Exhibit KK, M.E. 6/9/11.)

**Second PCR Proceeding** – One month later, Petitioner commenced his second PCR proceeding on July 12, 2011, by filing a PCR Notice dated July 8, 2011.  (Exhibit LL.)   Counsel was appointed (Exhibit MM, M.E. 1/31/12), but counsel eventually filed a Notice of Completion of Review (Exhibit NN) evidencing an inability to find an issue for review.  Petitioner then filed a *pro per* PCR Petition (Exhibit QQ) and Motion for New Counsel (Exhibit TT).  On January 17, 2013, the PCR court denied the motion for new counsel.  (Exhibit UU, M.E. 1/17/13.)  On March 28, 2013, the PCR court denied the PCR Petition with respect to the asserted claims of ineffective assistance of counsel, and dismissed the other claims as "precluded."  (Exhibit VV, M.E. 3/28/13.)

**Third PCR Proceeding** – Over one year later, Petitioner commenced his third PCR proceeding on April 21, 2014, by filing a PCR Notice (Exhibit WW), and PCR Petition (Exhibit XX), dated April 18, 2014    Following briefing (Exhibits ZZ and AAA), the PCR court denied the Petition on July 8, 2014 for failure to state a colorable claim.  (Exhibit BBB M.E. 7/8/14.)    Petitioner filed a Motion for Reconsideration (Exhibit CCC), which was denied on September 8, 2104 (Exhibit DDD, M.E. 9/8/14).

Petitioner then sought (Exhibit EEE) and obtained an extension through November 5, 2014 to file a petition for review.  (Exhibit FFF, M.E. 10/16/14.)  As of January 12, 2015, Petitioner had not filed a petition for review.  (Exhibit GGG, Docket.)

### E.  PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on April 21, 2014 (Doc. 1).  The Petition is dated April 17, 2014 (*id.* at 11), and the postage stamp on the envelope reflects a date of April 17, 2014 (Doc. 1-1).   Liberally construed, **NEED** CITE, Petitioner's Petition asserts the following four grounds for relief:

> (1) **Insufficient Evidence** - Petitioner was convicted on insufficient evidence of his intent to commit murder or knowing participation in murder, in violation of his rights under the 5th, 6th, and 14th Amendments (Petition, Doc. 1at 6);

> (2) ***Brady* Disclosures** – the prosecutor failed to disclose exculpatory evidence *see Brady v. Maryland*, 373 U.S. 83, 87 (1963) (*id.* at 7);

> (3) **Prosecutorial Misconduct** – the prosecutor pursued the prosecution without sufficient evidence of guilt and by pursuing a joint trial to convict Petitioner based upon inferences from his co-defendant's prior bad acts (*id.* at 8); and

> (4) ***Apprendi* Right to Jury Trial** – Petitioner was denied his right to a jury trial on the issue of dangerousness used to enhance his sentence, *see Apprendi v. New Jersey*, 530 U.S. 466 (2000),  (*id.* at 9).

Petitioner explains any untimeliness by asserting: "By rule, Petitioner has been exhaustion his state remedies." (Petition, Doc. 1 at 11.)

**Response** - On January 14, 2015, Respondents filed their Response ("Answer") (Doc. 18).   Respondents argue that the Petition is untimely, Grounds 2, 3 and 4 are procedurally defaulted, and all of Petitioner's claims are without merit.

**Reply** – The Court's service Order, filed October 20, 2014 (Doc. 10), set a deadline for a reply within 30 days of service of an answer.  Thus, a reply was due February 17, 2015.  That time passed, and Petitioner did not file a reply.

On May 26, 2015, Petitioner filed a Motion for Status (Doc. 19) indicating he had

4

not received a response to his Petition.  In response, Respondent asserted that a copy had been mailed upon filing of the Answer, but that a second copy was being served (Doc. 20).  On June 4, 2015, the Court "advise[d] Petitioner that in the absence of any reply by Petitioner or timely assertion of failing to receive the Answer, the Court is finalizing a Report & Recommendation founded upon the Petition (Doc. 1) and Respondents' Answer (Doc. 18)."  (Order 6/4/15, Doc. 21.)  To date, Petitioner has not filed a reply, nor sought an extension of time to do so.

### III. APPLICATION OF LAW TO FACTS

#### A. TIMELINESS

#### 1. One Year Limitations Period

Respondents assert that Petitioner's Petition is untimely.  As part of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress provided a 1-year statute of limitations for all applications for writs of habeas corpus filed pursuant to 28 U.S.C. § 2254, challenging convictions and sentences rendered by state courts.  28 U.S.C. § 2244(d).  Petitions filed beyond the one year limitations period are barred and must be dismissed.  *Id*.

#### 2. Commencement of Limitations Period

**Conviction Final** - The one-year statute of limitations on habeas petitions generally begins to run on "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[1]

Petitioner's direct appeal remained pending through June 7, 2011, when the Arizona Court of Appeals denied his appeal.  (Exhibit HH.)

---

[1] Later commencement times can result from a state created impediment, newly recognized constitutional rights, and newly discovered factual predicates for claims. *See* 28 U.S.C. § 2244(d)(1)(B)-(D).  Except as discussed hereinafter, Petitioner proffers no argument that any of these apply.

Arizona's rules require that petitions for review to the Arizona Supreme Court be filed within "30 days after the filing of a decision." Ariz.R.Crim.P. 31.19(a).   Arizona applies Arizona Rule of Criminal Procedure 1.3 to extend "the time to file an appeal by five days when the order appealed from has been mailed to the interested party and commences to run on the date the clerk mails the order." *State v. Zuniga*, 163 Ariz. 105, 106, 786 P.2d 956, 957 (1990).   The undersigned presumes (in Petitioner's favor) that the Memorandum Decision of the Arizona Court of Appeals was mailed to Petitioner on its filing date (rather than being delivered by some other means), and that Petitioner thus had 35 days from June 7, 2011, or until Tuesday, July 12, 2011, to seek review by the Arizona Supreme Court.

Petitioner did not seek such review, and thus his conviction became final on July 12, 2011.  Respondents concur with this calculation.  (Answer, Doc. 18 at 11.)

Therefore, Petitioner's one year habeas limitations period began running on July 13, 2011, and without any tolling expired on July 12, 2012.

### 3. Timeliness Without Tolling

Petitioner's Petition (Doc.1) was filed on April 21, 2014.

However, the Petition is dated April 17, 2014, and the postage stamp on the envelope reflects mailing on that date.  "In determining when a pro se state or federal petition is filed, the 'mailbox' rule applies. A petition is considered to be filed on the date a prisoner hands the petition to prison officials for mailing." *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010). Petitioner proffers nothing to show that his Petition was delivered to prison officials for mailing.  Because it would be reasonable to assume that Petitioner did deliver his petition to prison officials for mailing, and because it does not affect the outcome, the undersigned presumes (in Petitioner's favor) that his Petition was delivered to prison officials for mailing on the date it was signed, and that it should be deemed "filed" as of that date, April 17, 2014.

As determined in subsection (1) above, without any tolling Petitioner's one year

habeas limitations period expired no later than July 12, 2012, making his April 17, 2014 Petition over 22 months delinquent.

**4. Statutory Tolling**

The AEDPA provides for tolling of the limitations period when a "properly filed application for State post-conviction or other collateral relief with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). This provision only applies to state proceedings, not to federal proceedings. *Duncan v. Walker*, 533 U.S. 167 (2001).

**Properly Filed** - Statutory tolling of the habeas limitations period only results from state applications that are "properly filed," and an untimely application is never "properly filed" within the meaning of § 2244(d)(2). *Pace v. DiGuglielmo*, 544 U.S. 408 (2005). On the other hand, the fact that the application may contain procedurally barred claims does not mean it is not "properly filed." "[T]he question whether an application has been 'properly filed' is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar." *Artuz v. Bennett*, 531 U.S. 4, 9 (2000).

Even if the state court provides alternative grounds for disposing of the state application, a ruling that the application was untimely precludes it from being "properly filed" and tolling the limitations period. *Carey v. Saffold*, 536 U.S. 214, 225-26 (2002). If the state court summarily disposes of a state application without identifying if it was on timeliness grounds, or otherwise fails to give a clear indication wehther it has deemed the application timely or untimely, the federal habeas court "must itself examine the delay in each case and determine what the state courts would have held in respect to timeliness." *Evans v. Chavis*, 546 U.S. 189, 198 (2006).

**Mailbox Rule** - For purposes of calculating tolling under § 2244(d), the federal prisoner "mailbox rule" applies. Under this rule, a prisoner's state filings are deemed "filed" (and tolling thus commenced) when they are delivered to prison officials for mailing. In *Anthony v. Cambra*, 236 F.3d 568 (9th Cir. 2000), the Ninth Circuit noted:

> [I]n *Saffold v. Newland*, 224 F.3d 1087 (9th Cir.2000), we squarely held that the mailbox rule applies with equal force to the filing of state as well as federal petitions, because "[a]t both times, the conditions that led to the adoption of the mailbox rule are present; the prisoner is powerless and unable to control the time of delivery of documents to the court." *Id*. at 1091.

*Id*. at 575.

Similarly, the "mailbox rule" applies to determining whether an Arizona prisoner's state filings were timely. Although a state may direct that the prison mailbox rule does not apply to filings in its court, *see Orpiada v. McDaniel*, 750 F.3d 1086, 1090 (9th Cir. 2014), Arizona has applied the rule to a variety of its state proceedings. *See e.g. Mayer v. State*, 184 Ariz. 242, 245, 908 P.2d 56, 59 (App.1995) (notice of direct appeal); *State v. Rosario*, 195 Ariz. 264, 266, 987 P.2d 226, 228 (App.1999) (PCR notice); *State v. Goracke*, 210 Ariz. 20, 23, 106 P.3d 1035, 1038 (App. 2005) (petition for review to Arizona Supreme Court).

**Application to Petitioner** - Petitioner's limitations period commenced running on July 13, 2011. Petitioner's **first PCR proceeding** was concluded on June 9, 2011, before his limitations period began running. (Exhibit KK, M.E. 6/9/11.)

Petitioner's **second PCR proceeding** was commenced July 12, 2011, when Petitioner filed his second PCR petition. At that time, his one year had not yet begun to run. That proceeding remained pending until at least March 28, 2013, when the PCR court denied the Petition. (Exhibit VV.) However, the minute entry was not filed until April 2, 2013 (*id*. at 1.). Because it does not affect the outcome, the undersigned presumes (in Petitioner's favor) that the second PCR proceeding remained pending until April 2, 2013.

Respondents contend that Petitioner's PCR petition was not pending thereafter, despite the fact that he had the opportunity to seek further review by the Arizona Court of Appeals. (Answer, Doc. 18 at 11.) *See* Ariz. R. Crim. P. 32.9(c) (30 days to petition for review). That view is contrary to the mainstream.

In cases where the petitioner does *not* seek state appellate review of

1
2
3

a state habeas court's ruling on collateral review, and state law provides a definite time period in which to seek appellate review of a lower court's ruling on collateral review, the one-year AEDPA limitations period is statutorily tolled for the period in which the petitioner could have filed an appeal or application for review with a higher state court.

4   Means, *Postconviction Remedies* § 25:23 (2014).

5
6
7

Courts of appeals have unanimously held that even if the petitioner does not actually seek review of the lower court's decision denying post-conviction relief, he is entitled to statutory tolling for the period in which he could have filed an appeal or application for review with a higher state court.

8   Means, *Federal Habeas Manual* § 9A:57.

9        Indeed, although the Ninth Circuit has yet to directly address this issue explicitly,

10  a number of other circuits have held that statutory tolling under 28 U.S.C. § 2244(d) also

11  continues through the time that further state review could have been sought on a state

12  post-conviction relief petition, even though it was not sought.  *See e.g.  Drew v.*

13  *MacEachern,* 620 F.3d 16, 21 (**1st Cir.** 2010); *Bennett v. Artuz*, 199 F.3d 116, 119-20

14  (**2nd Cir.**1999), *aff'd on other grounds*, 531 U.S. 4, (2000); *Swartz v. Meyers*, 204 F.3d

15  417, 420-24 (**3rd Cir.**2000); *Taylor v. Lee*, 186 F.3d 557, 561 (**4th Cir.**1999); *Williams v.*

16  *Cain*, 217 F.3d 303, 310 (**5th Cir.** 2000) (adopting Third Circuit's reasoning in *Swartz*);

17  *Williams v. Bruton*, 299 F.3d 981, 983 (**8th Cir.** 2002); *Serrano v. Williams*, 383 F.3d

18  1181 (**10th Cir.**2004); and *Cramer v. Secretary, Dept. of Corrections*, 461 F.3d 1380,

19  1383 (**11th Cir.** 2006).

20        The Seventh Circuit has reserved the issue.  *See Williams v. Buss*, 538 F.3d 683,

21  685 (7th Cir. 2008).

22        To be sure, there are arguments against the approach.  "But arguably this result is

23  inconsistent with the Supreme Court's decisions in *Saffold*, *Pace*, and *Evans*." Means,

24  *Federal Habeas Manual* § 9A:57.  But the arguments are by no means clear.  *See*

25  *Holemen v. Ryan,* CV12-02350-PHX-SRB, 2013 WL 3716603, at *6 (D. Ariz. July 15,

26  2013) (analyzing *Carey v. Saffold*, 536 U.S. 214 (2002),  *Pace v. DiGuglielmo*, 544 U.S.

27  408 (2005), and 9th Circuit decisions in *Bonner v. Carey*, 425 F.3d 1145, 1149 (9th

28  Cir.2005), *amended on other grounds by* 439 F.3d 993 (9th Cir.2006) and *Thorson v.*

*Palmer*, 479 F.3d 643 (9th Cir.2007), and concluding that tolling did not apply for unsought review).

Indeed, the Ninth Circuit has cited approvingly the Second Circuit's formulation, that "a state petition is 'pending'...until...further appellate review is unavailable." *Saffold v. Newland*, 250 F.3d 1262, 1264 (9th Cir. 2000), *overruled on other grounds*, *Carey v. Saffold*, 536 U.S. 214 (2002) (quoting *Bennett*, 199 F.3d at 120). *But see Hines v. Bartos*, 2007 WL 1381655, *1 (D.Ariz.,2007) (CV 06-697-PHX-JAT) (concluding that " an appeal that is never filed cannot be considered timely and Petitioner cannot reap the benefit of statutory tolling without actually filing a petition for review of the post-conviction relief denial").

Respondents rely upon *Hemmerle v. Schriro*, 495 F.3d 1069, 1074-1076 (9the Cir. 2007) for the proposition that Arizona post-conviction proceedings ceased to toll AEDPA's limitation's period on the date that they were summarily dismissed by the Arizona trial court. Indeed, in *Hemmerle,* the Ninth Circuit concluded that Hemmerle's limitations period was tolled "at least until [the PCR petition] was summarily dismissed" by the PCR Court. *Id.* at 1074. However, *Hemmele* did not address whether the opportunity for further review extended the time when a PCR petition was "pending." Rather, the question before the Ninth Circuit was whether Hemmerle was entitled to "gap tolling" between the conclusion of his first PCR proceeding and the filing of his second, on the basis that the second petition was an attempt to cure the first petition, and thus a continuation of the first proceeding. Indeed, it appears the issue of an opportunity for further review on the first proceeding was not even addressed in the parties' briefs.

Nonetheless, for the reasons expressed by the undersigned in the Report & Recommendation under consideration in *Holemen v. Ryan,* CV12-02350-PHX-SRB, 2013 WL 3716603, at *6 (D. Ariz. July 15, 2013), the undersigned reluctantly concludes that the clear pattern in the Ninth Circuit, as demonstrated in cases such as *Hemmerle*, *Bonner*, 425 F.3d at 1149, and *Thorson*, 479 F.3d 643, is to deny tolling for the time for further review, when further review is not timely sought.

Thus, because Petitioner did not timely seek review from the denial of his second PCR petition, Petitioner's limitations period was tolled from its inception only until April 2, 2013. Thereafter, Petitioner's one year continued to run, and expired on April 2, 2014.

Petitioner's **third PCR proceeding** was commenced April 21, 2014, when Petitioner filed his third PCR notice (Exhibit WW) and petition (Exhibit XX). Those filings were dated April 18, 2014. Because it does not affect the outcome, the undersigned presumes (in Petitioner's favor) that these filings were delivered to prison officials for mailing on that date, and thus should be deemed filed as of April 18, 2014. As of that date, Petitioner's one year had expired. Once the statute has run, a subsequent post-conviction or collateral relief filing does not reset the running of the one year statute. *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001); *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003).

Consequently, Petitioner's habeas petition, assumed to be deemed filed as of April 17, 2014, was at least 15 days delinquent.


**5. Equitable Tolling**

"Equitable tolling of the one-year limitations period in 28 U.S.C. § 2244 is available in our circuit, but only when 'extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time' and 'the extraordinary circumstances were the cause of his untimeliness.'" *Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir. 2003).

> To receive equitable tolling, [t]he petitioner must establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way. The petitioner must additionally show that the extraordinary circumstances were the cause of his untimeliness, and that the extraordinary circumstances ma[de] it impossible to file a petition on time.

*Ramirez v. Yates,* 571 F.3d 993, 997 (9th Cir. 2009) (internal citations and quotations

omitted).  "Indeed, 'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.' " *Miranda v. Castro,* 292 F.3d 1063, 1066 (9th Cir. 2002)  (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.). Petitioner bears the burden of proof on the existence of cause for equitable tolling.  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) ("Our precedent permits equitable tolling of the one-year statute of limitations on habeas petitions, but the petitioner bears the burden of showing that equitable tolling is appropriate.").

Petitioner does not proffer any grounds for equitable tolling, and the undersigned finds none.

Petitioner does protest, as a basis for avoiding his untimely filing, that he was attempting to exhaust his state remedies.  (Petition, Doc. 1 at 11.)  However, the Supreme Court has observed that "A prisoner seeking state postconviction relief might avoid this predicament [of litigating in state court to find his federal petition barred], however, by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted."  *Pace*, 544 U.S. 408, 416 (2005).  Petitioner proffers no reason why he did not avail himself of this approach.

It is true that upon filing the instant proceeding, Petitioner asked the Court to stay consideration of this Petition to permit him to exhaust his state remedies.[2]  (Motion to Stay, Doc. 3.)   At that time, however, Petitioner's one year had already expired. Moreover, this indicates that Petitioner was capable of pursing such an approach.

Accordingly, the undersigned finds no basis for equitable tolling of the limitations period.

/ /

---

[2]  This court denied that motion as premature, given the lack of clarity whether the Petition was a "mixed petition" and because the state proceedings at least facially appeared to have concluded.  (Order 10/20/14, Doc. 10 at 2-3 and n. 1.)

### 6.  Actual Innocence

To avoid a miscarriage of justice, the habeas statute of limitations in 28 U.S.C. § 2244(d)(1) does not preclude "a court from entertaining an untimely first federal habeas petition raising a convincing claim of actual innocence."  *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1935 (2013).   To invoke this exception to the statute of limitations, a petitioner "'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'"  *Id.* at 1935 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).   This exception, referred to as the "*Schlup* gateway," applies "only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.' " *Id.*  at 1936 (quoting *Schlup,* 513 U.S. at 316).

Petitioner makes no such claim of actual innocence in this proceeding.

It is true that Ground One of the Petition asserts that there was insufficient evidence to convict him, based upon a lack of proof of intent to commit murder or knowing participation in the murder.  (Petition, Doc. 1 at 6.)   However, a finding of "actual innocence" is not to be based upon a finding that insufficient evidence to support the charge was presented at trial, but rather upon affirmative evidence of innocence.  *See U.S. v. Ratigan*, 351 F.3d 957 (9th Cir. 2003) (lack of proof of FDIC insurance in a bank robbery case, without evidence that insurance did not exist, not sufficient to establish actual innocence).[3]  Petitioner asserts no such affirmative evidence.

Accordingly, the actual innocence exception does not apply.

### 7.  Summary re Statute of Limitations

Taking into account the available statutory tolling, Petitioner's one year habeas

---

[3]  Respondents argue that Petitioner was convicted of felony murder and in Arizona, "felony murder does not require proof of specific intent to kill"; the "mens rea is satisfied by the intent required for the underlying felony." (Answer, Doc. 18 at 22 (quoting *State v. Schackart*, 858 P.2d 639, 644 (Ariz. 1993)).)

limitations period was tolled from its inception until April 2, 2013, commenced running on April 3, 2013, and expired on April 2, 2014, making Petitioner's Petition assumed to be deemed filed as of April 17, 2014, at least 15 days delinquent.  Petitioner has shown no basis for additional statutory tolling, and no basis for equitable tolling or actual innocence to avoid the effects of his delay.  Consequently, the Petition must be dismissed with prejudice.

Nonetheless, because the undersigned concludes that the statute of limitations bar to Petitioner's Petition (although factually plain) is not legally plain, the undersigned will proceed to address the Respondents' other defenses.

## B. EXHAUSTION AND PROCEDURAL DEFAULT

Respondents argue that, with the exception of Ground One, Petitioner has procedurally defaulted his state remedies on the claims in his Petition and thus they are barred from federal habeas review.

### 1. Exhaustion Requirement

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim.  *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied*, 455 U.S. 1023 (1982).

Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994).   Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court.  This is true even where alternative avenues of reviewing constitutional issues are still available in state court. *Brown v. Easter*, 68 F.3d 1209,

1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).  "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

## 2.  Procedural Default

Ordinarily, unexhausted claims are dismissed without prejudice.  *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal with prejudice of a procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts.  Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a) and time limit bar, set out in Ariz. R. Crim. P.  32.4. (Answer, Doc. 18 at 16.)

**Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence. Moreover, no provision is made for a successive direct appeal.  Accordingly, direct appeal is no longer available  for review of Petitioner's unexhausted claims.

**Remedies by Post-Conviction Relief** – Under Arizona's preclusion, waiver and timeliness bars, Petitioner can no longer seek review by a subsequent PCR Petition.

Preclusion Bar – Under the rules applicable to Arizona's post-conviction process, a claim may not be brought in a petition for post-conviction relief if the claim was "[f]inally adjudicated on the merits on appeal or in any previous collateral proceeding." Ariz. R. Crim. P. 32.2(a)(2).

<u>Waiver Bar</u> - Under the rules applicable to Arizona's post-conviction process, a claim may not ordinarily be brought in a petition for post-conviction relief that "has been waived at trial, on appeal, or in any previous collateral proceeding."   Ariz.R.Crim.P. 32.2(a)(3).   Under this rule, some claims may be deemed waived if the State simply shows "that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding." *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (quoting Ariz.R.Crim.P. 32.2, Comments). *But see State v.* Diaz, 236 Ariz. 361, 340 P.3d 1069 (2014) (failure of PCR counsel, without fault by petitioner, to file timely petition in prior PCR proceedings did not amount to waiver of claims of ineffective assistance of trial counsel).

For others of "sufficient constitutional magnitude," the State "must show that the defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the ground or denial of a right." Id.  That requirement is limited to those constitutional rights "that can only be waived by a defendant personally." *State v. Swoopes*, 216 Ariz. 390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007).  Indeed, in coming to its prescription in *Stewart v. Smith*, the Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-person jury under the Arizona Constitution, as among those rights which require a personal waiver. 202 Ariz. at 450, 46 P.3d at 1071.   Claims based upon ineffective assistance of counsel are determined by looking at "the nature of the right allegedly affected by counsel's ineffective performance. *Id.*

Here, none of Petitioner's claims are of the sort requiring a personal waiver, and Petitioner's claims of ineffective assistance similarly have at their core the kinds of claims not within the types identified as requiring a personal waiver.

<u>Timeliness Bar</u> - Even if not barred by preclusion, Petitioner would now be barred from raising his claims by Arizona's time bars. Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after

1    the issuance of the order and mandate in the direct appeal, whichever is the later." *See*

2    *State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive

3    petition, and noting that first petition of pleading defendant deemed direct appeal for

4    purposes of the rule).  That time has long since passed.

5        <u>Exceptions</u> - Rules 32.2 and  32.4(a) do not bar dilatory claims if they fall within

6    the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h).  See Ariz. R.

7    Crim. P.  32.2(b) (exceptions to preclusion bar); Ariz. R. Crim. P.  32.4(a) (exceptions to

8    timeliness bar).  Petitioner has not asserted that any of these exceptions are applicable to

9    his claims.   Nor does it appear that such exceptions would apply.  The rule defines the

10    excepted claims as follows:

11            d. The person is being held in custody after the sentence
             imposed has expired;

12            e. Newly discovered material facts probably exist and such
             facts probably would have changed the verdict or sentence. Newly

13           discovered material facts exist if:
                 (1) The newly discovered material facts were

14           discovered after the trial.
                 (2) The defendant exercised due diligence in securing

15           the newly discovered material facts.
                 (3) The newly discovered material facts are not

16           merely cumulative or used solely for impeachment, unless the
             impeachment evidence substantially undermines testimony which

17           was of critical significance at trial such that the evidence probably
             would have changed the verdict or sentence.

18                f. The defendant's failure to file a notice of post-conviction
             relief of-right or notice of appeal within the prescribed time was

19           without fault on the defendant's part; or
                 g. There has been a significant change in the law that if

20           determined to apply to defendant's case would probably overturn the
             defendant's conviction or sentence; or

21                h. The defendant demonstrates by clear and convincing
             evidence that the facts underlying the claim would be sufficient to

22           establish that no reasonable fact-finder would have found defendant
             guilty of the underlying offense beyond a reasonable doubt, or that

23           the court would not have imposed the death penalty.

24    Ariz.R.Crim.P. 32.1.

25        Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona

26    prisoner who is simply attacking the validity of his conviction or sentence.  Where a

27    claim is based on "newly discovered evidence" that has previously been presented to the

28    state courts, the evidence is no longer "newly discovered" and paragraph (e) has no

                                            17

application. Here, Petitioner has long ago asserted the facts underlying his claims. Paragraph (f) has no application where the petitioner filed a timely notice of post-conviction relief. Paragraph (g) has no application because Petitioner has not asserted a change in the law since his last PCR proceeding. Finally, paragraph (h), concerning claims of actual innocence, has no application to the procedural claims and insufficient evidence claims Petitioner asserts in this proceeding.

Therefore, none of the exceptions apply, and Arizona's time and waiver bars would prevent Petitioner from returning to state court. Thus, Petitioner's claims that were not fairly presented are all now procedurally defaulted.

### 3.  Procedural Bar on Independent and Adequate State Grounds

Related to the concept of procedural default is the principle of barring claims actually disposed of by the state courts on state grounds. "[A]bsent showings of 'cause' and 'prejudice,' federal habeas relief will be unavailable when (1) 'a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.'" *Walker v. Martin*, - - - U.S. - - -, 131 S.Ct. 1120, 1127 (2011).

In *Bennett v. Mueller*, 322 F.3d 573 (9th Cir.2003), the Ninth Circuit addressed the burden of proving the independence and adequacy of a state procedural bar.

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

*Id*. at 584-585.

//

//

**4. Application to Petitioner's Claims**

Here, Petitioner's one foray to the Arizona Court of Appeals was on direct appeal. There, although counsel filed an *Anders* brief, that brief did raise claims regarding: failure to severe defendants; insufficient evidence; improper jury instructions regarding separate consideration of defendants; improper response to a jury question; the jury panel was not a fair cross-section of the community with no afro-Americans on the panel; and Petitioner's alibi witnesses were not called. (Exhibit GG at 8.)  In contrast, in his habeas Petition, Petitioner asserts grounds for relief based on: (1) insufficient evidence; (2)  the prosecution's failure to make *Brady* disclosures; (3) prosecutorial misconduct based on insufficient evidence of intent and improper joinder; and (4) failure to provide a trial on the dangerousness of offenses for sentencing.  Thus, the only common claims are those relating to the sufficiency of the evidence.

For the reasons discussed in *Mintz v. Ryan*, CV-13-1543-PHX-SLG J, 2014 WL 8772953, at *11 *et seq.* (D. Ariz. Oct. 2, 2014) *report and recommendation adopted in part*, 2:13-CV-01543-PHX, 2015 WL 2152793 (D. Ariz. May 4, 2015), the undersigned concludes that the Arizona Court of Appeals' review under *Anders* did not amount to actual consideration and thus exhaustion of Petitioner's state remedies on any unpresented claims.

Respondents concede that, based upon the assertion of insufficient evidence in the Opening Brief on direct appeal, Ground One was before the Arizona Court of Appeals. (Answer, Doc. 18 at 16.)  Apart from that concession, the undersigned would find that the claim was not exhausted, and that it is now procedurally defaulted.

Before the Arizona Court of Appeals, Petitioner's Opening Brief simply asserted: "Evidence consisting primarily of co-Defendant Dewone Lee Hurd was insufficient to support Appellant's convictions."  (Exhibit GG at 8.)  Arguably, this was insufficient to assert a federal claim, since it references no federal law or constitutional principles. "In this circuit, the petitioner must make the federal basis of the claim explicit either by specifying particular provisions of the federal Constitution or statutes, or by citing to

federal case law." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005). *See also Scott v. Schriro*, 567 F.3d 573, 582 (9th Cir. 2009) ("Full and fair presentation additionally requires a petitioner to present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee ").

It is true that a state court's actual consideration of a claim satisfies exhaustion. *See Sandstrom v. Butterworth*, 738 F.2d 1200, 1206 (11th Cir.1984) ("[t]here is no better evidence of exhaustion than a state court's actual consideration of the relevant constitutional issue"); *see also Walton v. Caspari*, 916 F.2d 1352, 1356-57 (8th Cir.1990) (state court's sua sponte consideration of an issue satisfies exhaustion). However, the Arizona Court of Appeals did not address Petitioner's claim under any federal law.  At best, that court conducted a review for error under *Anders*.  Although here Petitioner raised the factual underpinnings of his federal insufficient evidence claim, the undersigned finds no reason to reject the reasoning of *Mintz, supra,* where the federal nature of the claim was not asserted, thus directing the state court to that particular claim.

Nonetheless, Respondents have conceded that Ground One is exhausted. "Procedural default, like the statute of limitations, is an affirmative defense…[and]should be raised in the first responsive pleading in order to avoid waiver."  *Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005).  It is true that, 28 U.S.C. § 2254(b)(3) provides: "A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."   But that explicit waiver requirement only applies where the federal court might find the state remedies on the claim unexhausted, and has no application where the federal court would find them procedurally defaulted.  *Franklin v. Johnson*, 290 F.3d 1223 (9th Cir. 2002).

Accordingly, the undersigned deems Petitioner's state remedies on Ground One to have been exhausted, and not procedurally defaulted.

However, none of Petitioner's other habeas claims were ever asserted to the Arizona Court of Appeals, and for the reasons discussed in subsection (2) hereinabove,

the undersigned concludes that Petitioner's state remedies on those claims are procedurally defaulted and barred from federal habeas review.

## 5. Cause and Prejudice

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default. *Reed v. Ross*, 468 U.S. 1, 11 (1984).

"Cause" is the legitimate excuse for the default. *Thomas v. Lewis*, 945 F.2d 1119, 1123 (1991). "Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting Reed, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990). The Supreme Court has suggested, however, that cause should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

Petitioner argues in his Petition (Doc. 1) that this Court should excuse his procedural defaults because: (1) with regard to Ground Two (disclosures), Petitioner had no knowledge of the law at the time of trial, and counsel did not move to suppress evidence (*id.* at 7); (2) with regard to Ground Three (prosecutorial misconduct), Petitioner had been told prior to trial by the prosecutor and defense counsel that there was no time to sever the trials, and no hearing was conducted (*id.* at 8); and (3) with regard to Ground Four, trial counsel and appellate counsel were ineffective in failing to maintain a record to support post-conviction relief (*id.* at 9).

**Deficiencies at Trial** - Petitioner's complaints about the conduct of counsel and the prosecutor and his own lack of knowledge at the time of trial had nothing to do with

and thus provide no cause to excuse Petitioner's failure to present his federal claims to the Arizona Court of Appeals, whether on direct appeal or in post-conviction relief.

**Ineffectiveness of Trial and Appellate Counsel** - The only relevant argument is Petitioner's assertion that trial counsel failed to preserve issues for review and appellate counsel failed to present them.  Ineffective assistance of counsel may constitute cause for failing to properly exhaust claims in state courts and excuse procedural default.  *Ortiz v. Stewart*, 149 F.3d 923, 932, (9th Cir. 1998).   However, "[t]o constitute cause for procedural default of a federal habeas claim, the constitutional claim of ineffective assistance of counsel must first have been presented to the state courts as an independent claim." *Cockett v. Ray*, 333 F.3d 938, 943 (9th Cir. 2003).   Here, Petitioner has not properly presented to the Arizona Court of Appeals any federal claim of ineffective assistance of trial or appellate counsel.  Accordingly, he may not now rely upon such arguments to excuse his procedural defaults.

**Ineffectiveness of PCR Counsel** - To the extent that Petitioner's arguments could be liberally construed to assert ineffective assistance of PCR counsel, such arguments are not cognizable.  "There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (citations omitted). Where no constitutional right to an attorney exists (e.g. in a PCR proceeding), ineffective assistance will not amount to cause excusing the state procedural default.  *Ortiz v. Stewart*, 149 F.3d 923, 932, (9th Cir. 1998).

The Supreme Court has recognized two exceptions to that principle, neither of which is applicable here.

The first involves abandonment.  In *Maples v. Thomas*, 132 S.Ct. 912 (2012), the Supreme Court held that cause could be shown when post-conviction counsel was not merely negligent (and under the law of agency, that negligence being chargeable to the petitioner) but had abandoned the representation without notice to the petitioner, resulting in the loss of his state remedies.  Petitioner proffers nothing to show a complete

abandonment by PCR counsel, as opposed to routine ineffectiveness.  The mere fact that PCR counsel ultimately unable to find an issue for review (*see* Exhibit NN, Not. Compl. Rev.) does not mean counsel abandoned Petitioner.

The second involves ineffectiveness in failing to assert claims of ineffective assistance of trial counsel.  In *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), the Court recognized that because courts increasingly reserve review of claims of ineffective assistance of trial counsel to post-conviction relief proceedings, the ineffectiveness of counsel in such PCR proceedings could effectively defeat any review of trial counsel's ineffectiveness.  Accordingly, the Court recognized a narrow exception to *Coleman's* ruling on the ineffectiveness of PCR counsel as cause to excuse a procedural default on such a claim.   But here, Petitioner has not asserted any claim of ineffective assistance of trial counsel as claim for relief, only as cause to excuse a procedural default.  Therefore, *Martinez* has no application.

**Summary re Cause and Prejudice** – Based upon the foregoing, the undersigned concludes that Petitioner had failed to establish cause to excuse his procedural defaults.

Both "cause" and "prejudice" must be shown to excuse a procedural default, although a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).  Petitioner has filed to establish cause for his procedural default.  Accordingly, this Court need not examine the merits of Petitioner's claims or the purported "prejudice" to find an absence of cause and prejudice.

## 6. Actual Innocence as Cause

The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances, to avoid a "miscarriage of justice." *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).  Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually

innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added).   Although not explicitly limited to actual innocence claims, the Supreme Court has not yet recognized a "miscarriage of justice" exception to exhaustion outside of actual innocence.  *See* Hertz & Lieberman, *Federal Habeas Corpus Pract. & Proc.* §26.4 at 1229, n. 6 (4th ed. 2002 Cumm. Supp.).  The Ninth Circuit has expressly limited it to claims of actual innocence.  *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008).

As discussed in connection with the actual innocence exception to the statute of limitations, Petitioner makes no assertions of actual innocence, only claims of insufficient evidence.

Thus, Petitioner fails to make a showing that no reasonable juror would have found him guilty.  Accordingly his procedurally defaulted claims in Grounds Two, Three and Four must be dismissed with prejudice.

## C.  MERITS OF GROUND ONE

In his Ground One, Petitioner argues he was convicted on insufficient evidence of his intent to commit murder or knowing participation in murder, in violation of his rights under the 5th, 6th, and 14th Amendments (Petition, Doc. 1 at 6).

The Due Process Clause of the Fourteenth Amendment protects a defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  "The Due Process Clause of the Fourteenth Amendment denies States the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense."  *Carella v. California*, 491 U.S. 263, 265 (1989) (citation omitted).

Here, Petitioner contends there was not proof of element of the requisite *mens rea* to support his murder conviction, *e.g.* intent to commit the murder, or the knowing participation in the murder.

The trial court instructed the jury on the murder charge as follows:

> In Count 1, the State has charged both Defendants with the crime of First-Degree Murder. The crime of First-Degree Murder requires the State to prove that:
>
> 1. Defendants and other persons committed or attempted to commit armed robbery and/or Burglary in the First Degree; and
>
> 2. In the course of and in furtherance of this crime or immediate flight from this crime, Defendants  or another person caused the death of [the victim].

(Exhibit CC, R.T. 4/21/10 at 12.)[4]

As argued by Respondents, Petitioner misapprehends the nature of felony murder. Indeed, Arizona's first degree murder statute, Ariz. Rev. Stat. § 13-1105, provides for felony murder.  "A person commits first degree murder if…the person commits or attempts to commit…burglary under § 13-1506…and, in the course of and in furtherance of the offense or immediate flight from the offense, the person or another person causes the death of any person."  Ariz. Rev. Stat. § 13-1105(A)(2).  "It is well established that no lesser included offense to felony murder exists because the *mens rea* necessary to satisfy the premeditation element of first degree murder is supplied by the specific intent required for the felony." *State v. LaGrand*, 153 Ariz. 21, 30, 734 P.2d 563, 572 (Ariz. 1987).  "Homicide is murder if the death results from the perpetration or attempted perpetration of one of the specific offenses listed…[t]he specific intent for the felony, in this instance burglary, supplies the necessary element of malice or premeditation." *State v. Ferrari*, 112 Ariz. 324, 328, 541 P.2d 921, 925 (1975).

Accordingly, to fully prove the offense of felony murder, the prosecution was not required to prove that Petitioner intended to commit a murder, or even that he knowingly participated in a murder.  The only *mens rea* required was that Petitioner intended to commit a burglary.  Petitioner proffers nothing to suggest there was insufficient evidence to show he intended to commit a burglary.

---

[4] The copy of the Indictment (Exhibit A) provided by Respondents omits the page(s) containing the charge of first degree murder, making it unclear whether the count was specifically alleged as felony murder, or as an undesignated first degree murder. Nonetheless, constitutionally adequate notice of felony murder may be provided during trial, even when the charging document has not charged the defendant with either felony murder or the predicate crime. *Stephens v. Borg*, 59 F.3d 932, 935 (9th Cir. 1995).

Therefore Ground One is without merit.

## IV.   CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment. The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner. Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

**Standard Met in Part** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be in part on procedural grounds, and in part on the merits.

Merits Decisions - Under the reasoning set forth herein, the constitutional claims disposed of on the merits are plainly without merit.

Procedural Decisions - With regard to the statute of limitations defense, the undersigned finds that jurists of reason would find it debatable whether the Petitioner should be denied tolling for the time for unsought review from his second PCR proceeding, rendering the Petition timely. Thus, assuming a valid claim has been presented, to the extent that the district court's judgment depends upon the denial of such statutory tolling, then a certificate of appealability should issue on this portion of the decision.

As to the remaining procedural decisions, the undersigned finds that jurists of reason would not find it debatable whether the district court was correct in its procedural ruling.

Assertion of Facially Valid Claims – To grant a certificate of appealability on a procedural decision, the Court must also find that Petitioner states a valid claim. The *valid claim* determination for procedural rulings does not require the Court to make a "definitive" determination of the merits of the claims, but rather only a "preliminary" one. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003). It requires only "a general assessment of their merits," *id*. at 336, and not a "certainty of ultimate relief," *id*. at 337. The Ninth Circuit has taken a particularly broad view of this standard, at least in comparison to some other circuits. *See* David Goodwin, *An Appealing Choice: An Analysis of and A Proposal for Certificates of Appealability in "Procedural" Habeas Appeals*, 68 N.Y.U. Ann. Surv. Am. L. 791, 821 (2013) (comparing circuits). The Ninth Circuit has concluded: "we will simply take a 'quick look' at the face of the complaint to determine whether the petitioner has 'facially allege[d] the denial of a constitutional right.' " *Lambright v. Stewart*, 220 F.3d 1022, 1026 (9th Cir. 2000) (quoting *Jefferson v. Welborn*, 222 F.3d 286, 289 (7th Cir. 2000)). Thus, in resolving the instant issue, the Court need not evaluate whether Petitioner's claims are ultimately substantiated by the record, but simply whether the Petition has made out a constitutional claim.

Moreover, circuit court precedent is not determinative in deciding whether a claim is substantial.  "Even if a question is well settled in our circuit, a constitutional claim is debatable if another circuit has issued a conflicting ruling." *Allen v. Ornoski*, 435 F.3d 946, 951 (9th Cir. 2006).

Neither is the court bound by the deference normally required for review of claims of state prisoners under the AEDPA.  *See Camargo v. Ryan*, CV-13-02488-PHX-NVW, 2015 WL 2142711, at *4 (D. Ariz. May 4, 2015).

Here, the undersigned has concluded that **Ground One** is without merit. Nonetheless, the allegation that a conviction is based upon insufficient evidence is sufficient to facially allege the denial of a constitutional right under the Ninth Circuit's "quick look" standard.  That it may be deemed by the undersigned to be without merit after examining the state law and facts of the case does not alter the facial validity of the claim.

Petitioner's **Ground Two** asserts that the prosecutor failed to disclose evidence regarding the death of an accomplice, Camion Williams, after the fact. Petition, Doc. 1 at 7.)   Respondents assert Williams "escaped apprehension and later met a violent death in Victorville, California. (Answer, Doc. 18 at 3 (citing Exhibit AA, R.T. 4/20/10 at 30-31). In *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.  373 U.S. 83, 87 (1963). Petitioner fails to allege, however, how this information was exculpatory.  He alleges Williams would have provided exculpatory testimony, and thus his death denied Petitioner that evidence, but Petitioner proffers nothing to explain how Williams' death itself was exculpatory. Accordingly, Ground Two fails to set out a facially valid constitutional claim.

Petitioner's **Ground Three** argues that the prosecutor pursued the prosecution without sufficient evidence of guilt and by pursuing a joint trial to convict Petitioner based upon inferences from his co-defendant's prior bad acts.  (Petition, Doc. 1 at 8.)

Although prosecutors enjoy almost unfettered discretion in their charging decisions, the courts have recognized that prosecutions pursued "in bad faith without hope of obtaining a valid conviction" may qualify as a constitutional violation. *Perez v. Ledesma*, 401 U.S. 82, 85 (1971). *See* Gershman, *Prosecutorial Misconduct* § 4:70 (2nd ed.). In the context of a convicted defendant, however, it is unclear how Petitioner would show prejudice. The undersigned has not identified, however, any cases precluding relief on such a violation solely by virtue of ultimate conviction.

With regard to joinder, the discretion lies with the court not the prosecutor. Thus, cases on improper joinder have focused on the trial court's actions in allowing joinder. *See e.g. Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2003). Petitioner proffers nothing to suggest, even assuming bad faith on the part of the prosecutor, that would make the prosecution's pursuit of a joint trial grounds for relief. Indeed, the burden is on the defendant to oppose joinder. *See United States v. Parson*, 452 F.2d 1007, 1008 (9th Cir. 1971) (waiver of right to severance by failing to oppose joinder prior to trial).

Nonetheless, under the "quick look" standard, the portion of Ground Three relating to bad faith prosecution states a facially valid constitutional claim.

Petitioner's **Ground Four** argues that Petitioner was denied his right to a jury trial on the issue of dangerousness used to enhance his sentence, *see Apprendi v. New Jersey*, 530 U.S. 466 (2000). (Petition, Doc. 1 at 9.) Indeed, in *Apprendi v. New Jersey*, 530 U.S. 466 (June 26, 2000), the Court interpreted the constitutional due-process and jury-trial guarantees to require that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490. In *Blakely v. Washington*, 542 U.S. 296 (June 24, 2004), the Court extended *Apprendi*, by holding that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U.S. at 303. *Compare* Ariz. Rev. Stat. § 13-702 (normal sentencing ranges) *with* Ariz. Rev. Stat. § 13-704 (dangerous offender sentencing). Accordingly,

**Ground Four** states a facially valid constitutional claim.

**Conclusion** - Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability on the tolling issue should be granted.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Petition for Writ of Habeas Corpus, filed April 21, 2014 (Doc. 1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **GRANTED** as to the issue of statutory tolling for the time to pursue unsought review.

## VI.  EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-

47 (9th Cir. 2007).

Dated: June 23, 2015

14-0834r RR 15 0521 on HC.docx

James F. Metcalf
United States Magistrate Judge